UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| BRANDON REED, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NORFOLK SOUTHERN CORPORATION,<br><br>Defendant. | Civil Action No.<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES**

Plaintiff BRANDON REED, by and through his attorneys of record, alleges as follows:

**NATURE OF THIS ACTION**

1.  This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301-4335 ("USERRA"). It is brought by Mr. Reed against Defendant, Norfolk Southern Corporation. ("Norfolk").

2.  Pursuant to 38 U.S.C. §4323(h)(1), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]".

1

## JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this civil action founded upon federal question jurisdiction, 28 U.S.C. §1331, as conferred by actions arising under USERRA, 38 U.S.C. §4323(b)(1).

4. Venue is proper in this judicial district under 38 U.S.C. §4323(c)(2) because Defendant Norfolk maintains a place of business in this judicial district located at 650 W Peachtree St NW, Atlanta, GA, 30308, USA and is considered a "private employer" for the purposes of 38 U.S.C. §4303(4)(A).

## PARTIES

5. Plaintiff Mr. Reed currently resides in Cobb County, Georgia.

6. Defendant Norfolk is a private, for-profit company registered as a foreign limited liability company in the Commonwealth of Massachusetts, having a place of business within this court's judicial district. Norfolk was and is an "employer" for the purposes of 38 U.S.C. §4303(4)(A) and is subject to suit under USERRA §4323(a).

7. Mr. Reed was at all pertinent times alleged herein employed by Defendant Norfolk and also served as a commissioned officer in the United States Air Force Reserve ("USAFR"), holding the rank of Captain (O-3E). Plaintiff is a qualified employee and member of the uniformed services for purposes of 38 U.S.C. §4303(3), (9), and (16).

2

8. Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of defendant, or any of them herein, such individuals at all times acted on behalf of the defendants named in this action within the scope of their respective employments and agencies.

9. Whenever and wherever reference is made in this Complaint to any conduct of defendants, or any of them, such allegations or references shall also be deemed to mean the conduct of each defendant, acting individually, jointly and severally.

10. Plaintiff is informed and believes, and on the basis of that information and belief, alleges that all times mentioned in this Complaint, defendants were the agents and employees of their codefendants, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment.

## FACTUAL ALLEGATIONS

11. Mr. Reed realleges and incorporates herein by reference each and every allegation contained within paragraphs 1 through 10, inclusive, as though set forth at length herein and made a part hereof.

12. In February of 2023, Mr. Reed interviewed for a Pilot position with Norfolk. During the initial interview, Mr. Reed was asked extensively by Director of Norfolk Southern Aviation, Mr. Mark Chaffinch, about his military service

obligations. Mr. Reed explained that he was subject to drill weekends, annual training, additional flights from time-to-time, and military exercises.

13. Following the interview, Norfolk extended an offer of employment to Mr. Reed as a Co-Captain. Mr. Reed accepted, and began his employment with Norfolk on March 24, 2023.

14. Mr. Reed worked out of the Fulton County Airport – Brown Field, where Norfolk retained a hangar and three aircraft utilized for executive travel.

15. The compensation Mr. Reed received included a salary, performance-based bonus incentives, and pension contributions.

16. In July 2023, Mr. Reed performed military service in support of an exercise from July 5th through July 22nd. Mr. Reed provided timely notice of the military service to Norfolk.

17. When Mr. Reed returned to his work at Norfolk, Mr. Chaffinch contacted him via telephone, and asked Mr. Reed about the amount of military leave he had taken while employed with Norfolk, stating "[w]e hired you to work for us and that's what you need to do." Mr. Reed explained that the exercise was part of his military service obligation, however, Mr. Chaffinch told Mr. Reed that he needed Mr. Reed "in the office" where they were paying him to work for Norfolk.

18. In August 2023, Mr. Reed learned that his unit was expected to deploy overseas in August 2024. He provided verbal notice of the deployment to Mr.

4

Chaffinch and his direct supervisor at Norfolk, Assistant Chief Pilot Mr. Mark Ograbisz.

19. In October 2023, Mr. Reed learned from his military unit that his anticipated deployment overseas was moved up to April 2024 instead of August 2024. Mr. Reed provided verbal notice of this change to Mr. Chaffinch and Mr. Ograbisz.

20. Additionally, in October 2023, Mr. Reed performed an "out and back" flight with Mr. Ograbisz. Upon his return, Mr. Reed stopped by Mr. Chaffinch's office to see if he needed anything before Mr. Reed left for the day. Mr. Chaffinch said "actually, yes – if you have a moment, lets step into the conference room." Mr. Reed agreed, and Mr. Ograbisz joined them, as well.

21. In the conference room, Mr. Chaffinch told Mr. Reed "your military leave is excessive to the point where I had to consult Human Resources." Then, he asked Mr. Reed if his military duty was mandatory or voluntary, stating "where do you see yourself in five years – full time with the Guard[1], or fulltime here?" Mr. Reed replied that he wanted to continue his civilian employment with Norfolk and his military service as a pilot in the USAFR.

22. Mr. Chaffinch then asked Mr. Reed to provide the phone number of his military Wing Commander, Colonel Richard Konopczynski. Mr. Reed requested

---

[1] Presumably, Mr. Chaffinch mistook Mr. Reed's service in the USAFR for service in the National Guard.

5

permission from Colonel Konopczynski, and upon approval, provided the information to Mr. Ograbisz via text message.

23. On November 8, 2023, Mr. Chaffinch contacted Colonel Konopczynski, stating concerns about the amount of military leave Mr. Reed was taking. Colonel Konopczynski responded that the military service Mr. Reed was performing was necessary.

24. On November 29, 2023, Mr. Reed received official orders from his military unit for his anticipated overseas deployment. Shortly after, he timely provided the orders to Mr. Chaffinch and Mr. Ograbisz.

25. On January 11, 2024, Mr. Chaffinch advised Mr. Reed that while he was on military leave, he would lose access to his Norfolk accounts until he returned due to being placed on an "inactive" status. Additionally, Mr. Chaffinch told Mr. Reed when he was on his deployment, he would not receive any differential pay– contrary to Norfolk's military leave pay policy.

26. Norfolk's military leave policy provides a monthly stipend to employees while they execute active-duty military orders for up to 18 months.

27. On January 12, 2024, Mr. Ograbisz contacted Mr. Reed's immediate supervisor, Squadron Commander Lieutenant Colonel Rafael Rondon, and asked when Mr. Reed received notice of his anticipated military service, because Mr. Reed wasn't giving the company enough notice of military orders.

28. On April 5, 2024, Mr. Reed received an email from Mr. Chaffinch asking him to report for a meeting with him at the Norfolk hangar that following Monday, on April 8, 2024. Mr. Reed confirmed his availability to meet with Mr. Chaffinch by text message.

29. On April 9, 2024, Mr. Reed reported to the hangar. Mr. Chaffinch was accompanied by a Norfolk Human Resources employee, Mr. Hugh B. Dodd. Once the three parties sat down at the conference table, Mr. Chaffinch stated "Brandon, I know this is probably not something you were expecting, but effective today we are going to have to let you go for performance reasons." Mr. Reed then asked what the specific performance reasons were, and Mr. Chaffinch responded "unfortunately we are not going to be able to talk about that today."

30. Mr. Reed responded that he had never been late to work, always met the duties of his position, had received positive feedback from every Norfolk employee he had flown with, and never received a single negative counseling, written report, or any other informal negative feedback. Mr. Reed again asked what "performance reasons" were that led to his termination, but Mr. Dodd said they would "not be talking about that today," at which point Mr. Chaffinch returned to his office.

31. Mr. Reed told Mr. Dodd that he believed the timing of his termination was suspicious since it was occurring approximately a week before Mr. Reed was expected to begin active-duty deployment orders on April 16, 2024.

32. On April 16, 2024, Mr. Reed began active-duty orders to prepare for an overseas deployment that was expected to last up to five months.

33. Mr. Reed is currently on active-duty orders, and has been attempting to secure subsequent civilian employment. However, the "performance" basis for his termination has limited Mr. Reed's opportunity to secure subsequent employment, as that specific connotation on a termination has a negative effect on a pilot's reputation.

34. In 1996, the Pilot Records Improvement Act ("PRIA"), as amended, was enacted, and requires that certain hiring air carriers and operators evaluate certain information concerning a pilot/applicant's training, experience, qualification, and safety background, before allowing that individual to begin service as a pilot with their company. Under PRIA, a commercial air carrier cannot allow a pilot to conduct flights until it obtains and reviews the last 5 years of the pilot's background and safety records. The FAA records are obtained via the Pilot Record Database ("PRD"), found at 14 C.F.R. §111.

35. Because of Norfolk's "performance" based termination, Mr. Reed has yet to receive an offer for a subsequent position of employment as a pilot with comparable compensation and incentives.

## VIOLATIONS OF 38 U.S.C. §4301 *et seq.*

36. Mr. Reed incorporates by reference the allegations contained in Paragraphs 1 through 36 as if fully restated herein.

37. USERRA prohibits "discrimination against persons because of their service in the uniformed services." 33 U.S.C. §4301(a)(3).

38. Section 4311(a) of USERRA states in relevant part, that a person "who is a member of… performs, has performed,… or has an obligation to perform service in a uniformed service shall not be denied… reemployment, retention in employment,… or any benefit of employment by an employer on the basis of that membership,… performance of service, or obligation."

39. Section 4311(c) further provides, in relevant part, that "[an] employer shall be considered to have engaged in actions prohibited… if the person's membership… or obligation for service in the uniformed services is a motivating factor in the employer's action."

40. A "benefit of employment" is defined as:

The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, include any advantage, profit, privilege, gain, status, account, or interest (including

9

> wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations and the opportunity to select work hours or location of employment.

38 U.S.C. §4303(2).

41. USERRA's definition of "service in the uniformed services" covers all categories of military training and service, including duty performed on a *voluntary* or *involuntary* basis, in time of peace or war. 38 U.S.C. §4312(e)(1)(A)(i); 20 C.F.R. §1002.115. (italics added).

42. Mr. Reed's protected status as a member of the USAFR was a substantial or motivating factor in Defendant terminating Mr. Reed from his employment with Norfolk.

43. As a direct and proximate result of the conduct of Defendant as set forth in this count, Mr. Reed has suffered injuries and damages, including, but not limited to, loss of past earnings and benefits, and loss of future earnings and benefits, all amounts to be proven at trial.

44. Plaintiff alleges that Defendant had knowledge of Plaintiff's USERRA protections, and that Defendant's violations of USERRA were willful and requests liquidated damages in an amount equal to the amount of his lost wages and other benefits pursuant to 38 U.S.C. §4323(d)(1)(C).

45. Pursuant to 38 U.S.C. §4323(h)(2), Plaintiff further requests an award of reasonable attorney's fees, expert witness fees, and litigation expenses.

## PRAYER FOR RELIEF

**WHEREFORE**, based upon the foregoing, Plaintiff prays for the following relief against Defendant:

1. Declaration that Defendant's actions and practices complained of herein are unlawful and in violation of USERRA, 38 U.S.C. §4301, *et seq.*;

2. Require that Defendant fully comply with the provisions of USERRA by providing Plaintiff all employment benefits denied to him as a result of the unlawful acts and practices as complained herein.

3. Require Defendant to remove any reference to "performance-based" termination from Plaintiff's PRIA records;

4. Fees and expenses, including attorneys' fees pursuant to 38 U.S.C. §4323(h)(2);

5. Award Plaintiff prejudgment interest on the amount of lost wages and employment benefits found due;

6. Order that Defendant pays compensatory and/or liquidated damages in an amount equal to the amount of lost compensation and other benefits suffered by reason of Defendant's willful violation of USERRA;

7. Grant an award for costs of suit incurred; and

8. Grant such other further relief as may be just and proper, and which Plaintiff may be entitled to under all applicable laws.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

Dated: May 29, 2024

Respectfully submitted,

**SCHNEIDER INJURY LAW**

s/ Bethany L. Schneider, Esq.
Georgia Bar No. 940713
1201 Peachtree St. NE, Suite 2000
Atlanta, Georgia 30361
Tel: (404) 800-3060
bethany@schneiderinjuryattorney.com

**PILOT LAW, P.C.**
Brian J. Lawler, Esq.
4632 Mt. Gaywas Dr.
San Diego, CA 92117
Tel: (619) 255-2398
Email: blawler@pilotlawcorp.com
*Pro hac vice* pending

**KEVIN WILSON LAW PLLC**
Kevin L. Wilson, Esq.
3110 Horton Ave
Louisville, KY 40220
Tel: (502) 276-5050
Email: kevin@klwilsonlaw.com
*Pro hac vice* pending

Attorneys for Plaintiff